IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:14CR446 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| ALVIN BANKS, et al. | ) | GOVERNMENT |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

This memorandum is being submitted to address the sentencing issues in this case as well as the issue of restitution and forfeited or seized funds in this case.

## BACKGROUND FACTS

On November 15, 2014, members of the Akron Police Department (APD), Humane Society of Akron and the Federal Bureau of Investigation (FBI) served an Akron Municipal Court search warrant at the home of lead defendant, Alvin Banks.

On November 15, 2014, defendant Alvin Banks was the "host" of an animal fighting venture at his residence in Akron, Ohio. On that date, having received information that a dog fight would occur at defendant Banks' residence, Akron Police Department obtained a search warrant for the residence. Pre-raid surveillance showed multiple vehicles and individuals arriving at the residence that evening. Surveillance showed multiple individuals inside the curtilage of the residence ultimately moving inside a garage located on the property. As the individuals began to

congregate inside the garage, a gate to a perimeter security fence was closed.  At that point, the search warrant was executed.

When law enforcement officers executed the search warrant, there were in excess of 50 people at the residence participating in pit bull fighting. People immediately began to flee to avoid arrest, discarding money and drugs as they ran. A total of 47 individuals were arrested. It was determined that some of the defendants came from out of state to attend the dog fight—from states such as Pennsylvania, Indiana, North Carolina and California. In total, $52,600 in U.S. currency, used as gambling proceeds, was seized or recovered on November 15, 2014. Also recovered from inside and outside the garage area were 10.5 grams of crack cocaine and 14.8 grams of marijuana.

Located within the garage of defendant Banks' property was a 16x16 foot ring used for dog fighting. The ring was surrounded by side boards. Placed below the side boards was carpeting.  Outside of the ring the carpet appeared black. Inside the ring, the carpet was brown, stained with large amounts of blood. The sideboards showed impact marks and large amounts of dried blood and some fresh blood. Located on the carpet within the ring were two bloodied "break sticks" used to pry a dog's mouth and teeth off another dog when a fight is finished. Next to the ring was a bucket of water (still hot) with a sponge—typically used in dog fighting to wash down dogs before fighting.  Eight pit bulls or pit bull mixes were recovered from the property including a pair of pit bulls with fresh wounds.  The pair was covered in blood from a fight that had clearly occurred just prior to the execution of the search warrant. Also located on the property was a treadmill used to exercise dogs for conditioning, numerous kennels, muzzles, leads and leashes, and weighted collars which are also used to help condition the dogs for fighting. Within the curtilage of the property were five vehicles, all of which had dog

shipping/transport crates in them or associated with them.  Although various out of state vehicles had dog crates in them, investigators were unable to determine which dogs belonged to whom other than one of the dogs belonged to defendant Mark Terrell McCraw based on a shipping label on the crate.  None of the dogs had chips or other identifying information on them which is not unusual in dog-fighting ventures.  (Photographs of the canines as well as the dog fighting ring and paraphernalia are attached to this document.)

A search of defendant Banks' residence showed a marijuana cultivation operation, including fifteen (15) marijuana plants, florescent lighting, and a heat and irrigation system. In the family room, hidden under a TV stand, was a loaded .38 caliber firearm located near a plastic bag containing approximately six (6) grams of marijuana. In a bedroom, under the bed, was a large glass jar containing approximately 55 grams of marijuana. The marijuana in the jar was individually packaged in smaller plastic bags, all consistent with intent to distribute the marijuana. Under the bed, immediately adjacent to the jar of packaged marijuana, was a loaded .410 shotgun.

All out of state defendants along with Alvin Banks are being prosecuted by this federal court.  All in-state defendants are being prosecuted by Summit County.

Defendants Ryan Anthony Sadler, Corey B. Moorefield, Samuel G. Mobley, Donell Higgenbotham and Anthony L. Harris pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture (Count 2).

## **SENTENCING RECOMMENDATIONS**

Sponsoring and exhibiting a canine in an animal fighting venture (7 U.S.C. § 2156(a)(1)) and buying, selling, delivering, possessing, training, and transporting canines for participation in an animal fighting venture, in violation of Title 7 U.S.C. §  2156(b), are both felonies punishable

by a maximum of five years of incarceration, a maximum $250,000 fine, up to three years of supervised release and a $100 special assessment.  Attending an animal fighting venture, in violation of Title 7 U.S.C. § 2156(a)(2)(A), is a misdemeanor punishable by a maximum of one year incarceration, a maximum $100,000 fine, up to one year of supervised release and a $25 special assessment.

Although specific sentencing recommendations will be made for each defendant, some general comments apply to all defendants.  It is anticipated that each of the defendants will attempt to downplay the seriousness of their crimes.  Indeed, defendant Mobley believes this prosecution is a mockery of the judicial system.

Of those defendants who have criminal records, there is a common denominator of drug offenses, particularly marijuana, as well as some crimes of violence.  Numerous defendants have arrests for either domestic violence or animal cruelty.

Dog fighting is a highly secretive enterprise that is extremely difficult for law enforcement to investigate.  Since 2008, dog fighting is a felony offense in all 50 states and the District of Columbia, Guam, Puerto Rico and the U.S. Virgin Islands.  In most states, the possession of dogs for the purpose of fighting is also a felony offense.  Being a spectator at a dog fight is illegal in all states.  And, in 2014, the crucial elements of the Animal Fighting Spectator Prohibition Act were signed into law as part of the Farm Bill.  This provision makes attending an animal fight anywhere in the U.S. a federal offense, and imposes additional penalties for bringing a child under age 16 to an animal fight.

Many people who participate in these fights lack even a semblance of respect for the animals, often starving and beating them to encourage aggressive behavior.  There are numerous reasons individuals become involved in dog fighting.  It has been posited that greed is often a

strong motivator in that illegal gambling is a strong component of most dog fights.  In this case, over $50,000 was seized during the search by law enforcement, most of which it is believed was gambling proceeds, money charged for admission or money to be placed on future dog fights that evening.  For other dog fighters, the appeal is simply in the sadistic enjoyment or entertainment of a brutal and bloody spectacle.  Referees, which were in attendance at the Akron dog fight, are typically paid for these events.  Each of the dogs' owners is responsible in many instances for payment to the referee for each fight.  Aside from money, the winner of dog fights can be awarded a trophy.  In fact, there were two trophies present at Banks' residence that evening to be awarded to the winners of dog fights – one of which was labeled "Best in Show" and the other titled "Best in Game."  Attendees at dog fights are typically invited by the host or by someone who can vouch for them to the dog fighting host.  As stated previously, the host of the dog fighting venture collects an admission fee, in this case $25, from each of the participants.

Dogs from professional fighters have been bred and trained to inflict injuries on other dogs, so they can be difficult to house and care for safely.  They are usually very friendly to people so they can be handled during fights.  However, they have been bred to attack other dogs or animals and, as such, are extremely dangerous in that context.  This fact is what complicates these investigations for law enforcement in that the likely seizure at animal fighting raids are the dogs themselves as well as training equipment and money.  These dogs, as evidenced in this case, must be cared for and maintained while the judicial process unfolds.  In addition, as here, dogs are often injured in these fights and need extensive veterinary treatment.  These dogs are also bred and conditioned to never give up when they are fighting, even if it means that they will be badly hurt or killed.  Dogs which do not perform well in the ring are often exterminated by methods such as shooting or electrocution.  Even dogs in perfect health are often killed if they

refuse to fight.  Even if dogs are seized and house, such as in the instant case, they must be closely monitored and re-trained to be placed in foster or adoptive homes.  As such, as this Court might expect, placement of these animals given their reputation and the liability attached can be an extremely difficult proposition, through no fault of the dogs.  Indeed, one of the pit bulls seized in this case had to be euthanized because he was too aggressive and handlers were unable to change his violent instincts.

      Dog fighting rings can be permanent or semi-permanent structures.  The ring in the garage at defendant Banks' residence was built in such a fashion that it could be dismantled.  The inside of the ring had carpeting and the corners were marked with pieces of duct tape known as "scratch lines."  These marks identify the starting position of the dogs.  "Bite sticks" or "pry bars" are used by the dogs' owners to pry open the jaw of the winning dog from the flesh of the losing dog in the fight.  Fighting dogs are typically trained for fights using treadmills for endurance and stamina as well as pull bars in which the dog is hung from a bar to strengthen the dog's bite.  At the start of a fight, the dogs are released from the corners of the pit which contains the dogs during the fight.  The dogs usually meet in the middle of the ring or pit, wrestling to grab hold of the opponent.  If they do, the dogs grab and shake to inflict maximal damage.  With their extremely powerful jaws, these dogs are able to inflict severe bruising, deep puncture wounds and broken bones.  Handlers are not permitted to touch the dogs except when told to do so by the referee.

      Finally, for an excellent legal review of the "unseemly world of dog fighting, discussing the origin and the history of dog fighting, the procedures for training dogs and holding dog fights today and notable dog fighting cases which serve as an example and reference for the judiciary, such as Michael Vick's case," the United States would direct the court to *United States v. Berry*,

6

2010 WL 1882057 (S.D. Ill. 2010) (unpublished), a copy of which is attached.  This case substantiates much of the above facts.  The case also makes several salient points about the life of these dogs:

> The lives of fighting dogs are not to be envied.  These dogs do not lead normal lives, but rather every aspect of the dog's life is carefully calculated to antagonize and thereby increase the aggression level of the dog.  Many fighting dogs spend their entire lives without basic nutrition, shelter and healthy socialization with humans and other animals.  Rather, fighting dogs spend the majority of their lives in filthy conditions, pinned in small cages or chained up with heavy chains across their neck.  As the dog grows, owners will add weights to the chains in order to increase the dog's strength.  Generally, the dogs are kept in close proximity to other fighting dogs in order to further antagonize and increase anxiety levels.  The dogs are also beaten and goaded on a daily basis in order the raise the dog's tolerance towards pain and increase the 'fight' within the dog.

In conclusion, dog fights promote insensitivity to animal suffering, enthusiasm for violence and disrespect for the law.  Even spectators provide much of the profit associated with dog fighting.  The money generated by admission fees and gambling helps keep this venture alive.  Because dog fights are illegal and therefore not widely publicized, spectators do not merely happen upon a fight; they seek it out.  They are willing participants who support a criminal activity through their paid admission and attendance.  No animal should be subjected to the living conditions, treatment, substandard care and on-average hour long fights to which these pit bulls and others in these ventures are exposed.  Because of their training and care, these dogs are not socialized with other dogs and even humans other than preparing them for a fight.  These dogs do not have a choice on any given day whether they "fight."  They are bred to exact the most amount of violence on another dog and are placed in a fighting ring at their owner's sadistic direction and whim.

## DEFENDANT ALVIN BANKS

Defendant Banks pleaded guilty in a written plea agreement to sponsoring and exhibiting a canine in an animal fighting venture, a violation of Title 7, United States Code, Section 2156(a)(1) and Title 18, United States Code, Section 2; attending an animal fighting venture, a violation of Title 7, United States Code, Section 2156(a)(2)(A) and Title 18, United States Code, Section 2; buying, selling, delivering, possessing, training and transporting canines for participating in an animal fighting venture, a violation of Title 7, United States Code, Section 2156(b) and Title 18, United States Code, Section 2; felon in possession of firearms and ammunition, a violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2); and possessing and manufacturing less than 50 marijuana plants, a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).  A charge of possessing a firearm in furtherance of drug trafficking, a violation of Title 18, United States Code, Section 924(c)(1)(A) (Count 6) will be dismissed at sentencing.

Defendant Banks has prior offenses for marijuana including a federal criminal conviction which did not score as well as other offenses.  In addition, he has had several pit bull offenses in 1992 and 2005 which also did not score.  His criminal history category, therefore, is a I and his adjusted offense score is a 17 with a USSG range of 24 to 30 months.

Based on the this Memorandum the United States would encourage the court to sentence defendant Banks to a guideline sentence of 24 to 30 months.

## DEFENDANT CARLTON DAVIS

Defendant Carlton Davis pleaded guilty in a written plea agreement to attending an animal fighting venture (Count 2), a violation of Title 7 U.S.C. § 2156(a)(2)(A) (Count 2).

Defendant Davis has a previous conviction for promoting/staging an animal fighting contest; possessing an animal for animal fighting contest; possession of animal fighting paraphernalia and cruelty to an animal, all in his home state of Indiana.  He received a sentence of six years for these offenses.  The Presentence Report notes as to this conviction that found at his residence were injured and malnourished dogs which appeared to be dying.  The dogs lacked food and water and were attached by heavy chains to 55-gallon drums.  Also located were weighted harnesses, a treadmill, scales and other paraphernalia used in animal fighting along with electrocution equipment to euthanize dogs.  Registration paperwork for 13 pit bulls was also located.  Finally, there was a dog fighting ring in the garage along with break sticks.  Both the ring and break sticks were covered in blood.  Investigators seized 15 live pit bulls also on the property.  Seven of the animals had fresh wounds.  Neighbors reported gatherings at the residence, men with dogs and men going in and out of the garage with dogs.

Davis has a criminal history category of III and an adjusted offense score of 8 for a USSG guideline calculation of 6 to 12 months.  While his rote and legalistic recitation of acceptance of responsibility statement in the Presentence Report technically qualifies him for a three level reduction, it most certainly was not authored by the defendant himself.  It is obvious that a six year sentence for these offenses, two years of which included incarceration, gained nothing for Davis in terms of lessons learned or rehabilitation.  Therefore, because of Davis' prior history of involvement in dog fighting at a high level and lack of true remorse, as well as to satisfy one of the sentencing goals of punishment and deterrence to the public, the United States would encourage this Court to sentence him to incarceration of 12 months.

### DEFENDANT ANTHONY L. HARRIS

Defendant Anthony L. Harris pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

In his statement in the Presentence Report, defendant Harris, who lives in Indiana, denied any knowledge of dog fighting at the Akron residence on November 15, 2014 and believed he was attending a "barbecue."  Such a statement is patently unbelievable as well as untenable since the home contained all the accoutrements of dog fighting as well as eight pit bulls on the premises which were being brought back and forth from the garage.  This, of course, is not to mention the ridiculousness of attending a barbecue hundreds of miles away.  Therefore, the United States would object to defendant Harris receiving a two level reduction for acceptance of responsibility.

Defendant Harris is a criminal history category I and has an offense score of 10 for a USSG range of 6 to 12 months.  The United States would encourage this Court to sentence defendant to a guideline sentence of incarceration of 12 months.

### DEFENDANT DONELL HIGGINBOTHAM

Defendant Donell Higginbotham pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

Defendant Higginbotham has a significant criminal history which includes cruelty to animals as well as firearm offenses and drugs.  One of the firearms offenses was a federal offenses of being a felon in possession of a firearm in 2005.

On the other hand, it should be noted that defendant Higginbotham pleaded guilty far before any of the other defendants in this case.  He is a criminal history category III with an

adjusted offense level of 8 for a USSG range of 6 to 12 months.  The United States would recommend a guideline sentence in this case with credit for time served.

## DEFENDANT MARK TERRELL McCRAW

Defendant Mark McCraw pleaded guilty in a written plea agreement to sponsoring and exhibiting a canine in an animal fighting venture (Count1), a violation of Title 7, U.S.C. § 2156(a)(1), attending an animal fighting venture (Count 2), a violation of Title 7 U.S.C. § 2156(a)(2)(A), and buying, selling, delivering, possessing, training, and transporting canines for participation in an animal fighting venture, in violation of Title 7 U.S.C. § 2156(b).

Defendant McCraw did not submit any oral or written statement of acceptance of responsibility, therefore, at this time he should not receive a two level reduction for the same pursuant to U.S.S.G. Section 3E1.1.  McCraw is a criminal history category IV with an offense level of 10 for a guideline sentencing range of 15 to 21 months, however, the maximum term of imprisonment is 12 months. Given defendant McCraw's role in this dog fighting venture which included shipping a canine from California to Ohio to participate in the dog fight as well as coming from California himself, the United States is recommending a guideline sentence of 12 months incarceration.

## DEFENDANT SAMUEL G. MOBLEY

Defendant Samuel G. Mobley pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

According to his Presentence Report, Mobley, who is from North Carolina, claimed he was at the Akron residence to purchase a pit bull and did not know anyone else present.  He further opined that this case was a "mockery of the judicial system."  He was not granted

acceptance of responsibility by the Presentence Report officer and the United States vehemently agrees.

Of significance to defendant Mobley, is that he has numerous arrests for animal cruelty or abuse of animals.  Even though many of these arrests resulted in dismissals or acquittals, the paint a picture of defendant Mobley's long term involvement in the dog fighting culture.  Instead of learning from past mistakes, however, he chose to continue in this awful and criminal endeavor.

Therefore, as a result of the above comments, the United States is recommending a sentence of 12 months incarceration.

## DEFENDANT COREY B. MOOREFIELD

Defendant Corey B. Moorefield pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

According to defendant Moorefield, he attended the dog fight with co-defendant Higgenbotham.  Moorefield states in the Presentence Report that he came to the residence meet with several females from Akron whom he had met previously.  Moorefield states he was at the house for only 10 minutes prior to being arrested and that he never entered the home or garage.  Therefore, not only does Moorefield's statement not qualify for acceptance of responsibility, it also does not meet an essential element of the crime of attending a dog fight, namely knowledge.

Defendant Moorefield's criminal history category is a I and his offense level is 10 with a U.S.S.G. range of 6 to 12 months.  The United States is recommending a sentence of six months incarceration for Moorefield.

**DEFENDANT DARIUS D. MUSE**

Defendant Darius D. Muse pleaded guilty in a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

According to the Presentence Report, defendant Muse states that he did not become aware that there was dog fighting on the premises until he was arrested.  Muse claims he was in the home watching strippers and basketball.  Muse also said he accompanied his two cousins, Mark McGraw, a co-defendant, and Mack McCraw, who was charged with attending a dog fight in Summit County.  The United States finds it incredulous that Muse did not know dog fighting was occurring given the number of people at the residence, the activity in the garage as well as he accompanied one of the defendants, Mark McGraw, who was instrumental in the dog fighting that evening.  Therefore, the United States would oppose acceptance of responsibility for Muse unless Muse modifies his acceptance of responsibility statement.  Knowledge is an element of the crime of attending an animal fighting venture, therefore, not only should he not be granted acceptance of responsibility but his statement even calls into question the validity of his guilty plea.

Therefore, Muse is a criminal history category I with a guideline score of 10 for a USSG sentencing range of 6 to 12 months.  Again, the United States is recommending a guideline sentence for Muse.

**DEFENDANT RYAN ANTHONY SADLER**

Defendant Ryan Anthony Sadler pleaded guilty without benefit of a written plea agreement to attending an animal fighting venture, a violation of 7 U.S.C. § 2156(a)(2)A) (Count 2).

In the Presentence Report, defendant Sadler states he rode to Akron from North Carolina with Samuel Mobley who intended to pick up a puppy.  Sadler further states that he did not know about the dog fight and remained in the car until arrested.  Therefore, the United States is also objecting to defendant Sadler receiving a two level reduction for acceptance of responsibility.

Defendant Sadler has a criminal history category of V as a result of convictions for a variety of crimes including assault with a deadly weapon inflicting serious injury and multiple drug related offenses involving cocaine and marijuana.

Defendant Sadler's criminal history category of V with an offense level of 10 results in a U.S.S.G. range of 6 to 12 months.  The United States is recommending a sentence of 12 months incarceration.

## DEFENDANT TOMMY L. WALKER

Defendant Tommy L. Walker pleaded guilty in a written plea agreement to attending an animal fighting venture (Count 2), a violation of 7 U.S.C. § 2156(a)(2)A).

While defendant Walker has prior violent arrests these cases were too old to count in his criminal history score.  Therefore, his criminal history score is I with an adjusted offense level of 8 for a USSG range of 0 to 6 months.  It should be noted that defendant Walker at least acknowledged the suffering of the dogs in this case by stating that he felt sorry for "those poor dogs."  The United States would recommend a guideline sentence in this case.

## ISSUE OF RESTITUTION

On November 15, 2014, the Akron Police Department conducted a search of Defendant Banks' residence in the City of Akron.  U.S. currency in the amount of $7,900 was found abandoned on the ground inside the garage where the dog fighting operation was taking place and in the woods where several individuals fled.  Found on Banks' person was $985.  Found

inside the residence was $8,810.  Defendant Anthony Harris had $36 on his person; defendant Darius Muse had $283 on his person; defendant Carlton Davis had $4,290 on his person; defendant Donnell Higgenbottom had $856 on his person; defendant Ryan Sadler had $1,372 on his person; defendant Mark McCraw had $1,250 on his person; defendant Corey Moorefield had $459 on his person; and defendant Samuel Mobley had $1,240 on his person.

A portion of the above U.S. currency was inadvertently returned by Akron Police Department to defendants Sadler, Mobley and Moorefield when state charges were dismissed in lieu of federal charges.

All seized money in this dog fighting investigation is currently in forfeiture litigation and/or criminal proceedings in the Summit County Court of Common Pleas.

The United States previously notified the federal defendants that Summit County had agreed to give approximately half of the forfeited funds to the Human Society of Greater Akron which significantly reduced their restitution amount.

The United States Marshal Service and Federal Bureau of Investigation assumed responsibility for the afflicted dogs on April 13, 2015 until the present.  The United States is seeking restitution for the care of these pit bulls from the date of their seizure by the Humane Society of Greater Akron on November 13, 2014 until April 13, 2015.  The Humane Society of Greater Akron has submitted an invoice which is contained in the Presentence Reports of all defendants detailing the care the dogs received during that time frame.  The invoice also presumes that the Humane Society of Greater Akron will receive approximately half, or $26,000, from the proceeds seized and potentially to be forfeited by the Akron Police Department and Summit County Prosecutor's Office.  Therefore, the remaining balance owed to the Humane Society for care of the animals is $18,478.66.

Defendant Banks is requesting that all the money seized by the Akron Police Department be credited toward this restitution figure of $18,478.66.  This position is incorrect on several levels.

The United States has no control over said seized funds and, as such, all litigation regarding these funds is being pursued by the Summit County Prosecutor's office and has been since the inception of this case in November, 2014.  This was a search warrant and arrests carried out primarily by Akron Police Department and agents of the Humane Society of Greater Akron with assistance by the Federal Bureau of Investigation.  Once it became clear that the investigation implicated numerous out-of-state defendants, it was agreed that the lead defendant, Alvin Banks, as well as all of the defendants who had traveled from other states to Akron, Ohio for the purpose of the dog fights would be prosecuted by federal authorities.  However, all monies seized in this case have been retained since November 14, 2014 by Summit County and the Akron Police Department.  These funds are also in current litigation in the Summit County Court of Common Pleas.  Some defendants (Mobley: $1,240; Sadler $1,372; Moorefield: $459) inadvertently had their seized monies returned when the federal indictment was filed and the state case was dismissed in lieu of federal prosecution.  Therefore, the amount of seized money must be reduced by $3,071.  Other seized money is currently in active state court litigation and, depending on the outcome of that litigation, may or may not be available.  Defendant Banks can only assert a claim in state court to money directly attributable to him and not money which was found abandoned or was found on the person of other state or federal defendants.

Defendant Banks cites no case law which gives a federal court jurisdiction to reach into state court and demand that the state court turn over money which is currently in forfeiture litigation in that state court including litigation in which other defendants are seeking the return

16

of that money.  The Summit County Prosecutor's Office has agreed to give approximately half of all monies forfeited to the Humane Society of Greater Akron.  The Humane Society, in turn, has agreed to accept this money as restitution for care of the canines resulting in a restitution figure of $18,478.66.  In addition, the United States is only seeking restitution for the money spent by the Humane Society on the care of the dogs and not money expended by federal authorities such as the United States Marshals Office and the Federal Bureau of Investigation.

Therefore, the United States is seeking joint and severable restitution for the Humane Society of Greater Akron from all federal defendants in the amount of at least $18,478.66.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:  /s/ *Linda H. Barr*
Linda H. Barr (PA: 41079)
Assistant United States Attorney
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0521
(330) 375-5492 (facsimile)
Linda.Barr@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2015, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ *Linda H. Barr*
Linda H. Barr
Assistant U.S. Attorney

17